IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

MOYACCA JONES,                )
                              )
    PLAINTIFF,                )
                              )
VS.                           )    CV99-H-2308-W
                              )
CHILDREN'S COMPREHENSIVE      )
SERVICES, INCORPORATED,       )
                              )
    DEFENDANT.                )

FILED
00 SEP 27 AM 11:28
U.S. DISTRICT COURT
N.D. OF ALABAMA

ENTERED
SEP 27 2000

## MEMORANDUM OF DECISION

The Court has before it the July 24, 2000 motion of defendant Children's Comprehensive Services, Incorporated ("CCS") for summary judgment. Pursuant to the Court's July 25, 2000 order, the motion for summary judgment was deemed submitted, without oral argument, on August 22, 2000.

### I. Procedural History

Plaintiff Jones commenced this action on September 1, 1999, by filing a complaint alleging violations of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, <u>et seq.</u> She asserts disparate treatment on the basis of



her race,[1] alleging that defendant terminated her employment on March 13, 1998 because of her race.

Defendant's July 24, 2000 motion for summary judgment simply asserts that no genuine issue of fact exists and that defendant CCS is entitled to judgment as a matter of law. (See Def.'s Mot. Summ. J. 1.). Defendant's brief in support of the motion adequately informs plaintiff of the grounds upon which summary judgment is sought. (See Def.'s Br. 6-9).

Both parties have filed briefs and submitted evidence in support of their respective positions. On July 24, 2000, defendant filed evidence[2] in support of its motion for summary judgment and also filed a brief in support of the motion. On August 15, 2000, plaintiff filed a brief in response to the

---

[1] The law and the analysis of that law as applied to the facts are the same for § 1981 and Title VII. See Standard v. A.B.E.L. Servs., Inc., 161 F.3d 1318, 1330 (11th Cir. 1998) ("Both of these statutes [Title VII and section 1981] have the same requirements of proof and use the same analytical framework, therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well."). The court will refer to this claim as a § 1981 claim since that is normally the vehicle preferred by a plaintiff since compensatory and punitive damages are not available in a "race" claim under Title VII. See 42 U.S.C. § 1981a(a)(1) (". . . and provided that the complaining party cannot recover under section 1981 of this title."

[2] The defendant submitted excerpts of the depositions of plaintiff and of John Faile (with selected exhibits) and affidavits of Stan Cordrey and Tracey Smith.

defendant's motion for summary judgment and evidence[3] in opposition thereto.

## II. Standards for Evaluating a Summary Judgment Motion

Under Federal Rule of Civil Procedure 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. Id. at 323. Once the moving party has met his burden, Rule 56(e) requires the nonmoving party to go beyond the pleadings and by his own affidavits, or by the depositions, answers to interrogatories, and admissions of file, designate specific facts showing that there is a genuine issue for trial. Id. at 324.

---

[3] The plaintiff also submitted excerpts from the depositions of plaintiff and of John Faile, plus defendant's response to EEOC regarding plaintiff's charge of discrimination.

The substantive law will identify which facts are material and which are irrelevant. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. Fitzpatrick v. City of Atlanta, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted. Id. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. See Fitzpatrick, 2 F.3d at 1115-17 (citing United States v. Four Parcels of Real Property, 941 F.2d 1428 (11th Cir. 1991)(en banc)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. Fitzpatrick, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways.  First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial.  Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u> show the absence of evidence in the record to support a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the district court that there is an absence of evidence to support the non-moving party's case.  <u>Fitzpatrick</u>, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point out to the court record evidence, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a

directed verdict motion at trial based on the alleged evidentiary deficiency. However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts. Lewis v. Casey, 518 U.S. 343, 358 (1996) (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992)).

### III. Relevant Undisputed Facts

Plaintiff was hired by CCS in August 1995 to work as a part-time child care worker in CCS's Tuscaloosa County Juvenile Detention Facility ("TCJDF"), (Pl. Depo., pp. 51-53; Faile Depo., p.7). She was interviewed and hired by Stan Cordrey, who was at that time the Administrator of TCJDF. (Pl. Depo., p. 50; Cordrey Aff.). As a child care worker, plaintiff's duties included monitoring and observing the juveniles, conducting periodic counseling sessions with them, and ensuring their needs were being met in relation to clothing, linens, and personal hygiene supplies. (Pl. Depo., pp. 52-53, 56; Faile Depo., p. 22, Ex. 3). In February 1998, John Faile replaced Cordrey as the Administrator of TCJDF and Cordrey was promoted to Regional Manager of CCS for Alabama. (Faile Depo., p.6; Cordrey Aff.). Soon thereafter, plaintiff, along with a Caucasian female, Margaret Wood, applied for a full-time child care worker position at TCJDF. (Pl. Depo., pp. 82-84; Faile Depo., pp. 18-20). Faile

6

awarded the position to plaintiff over Wood. (Pl. Depo., p. 84; Faile Depo., pp. 7, 8, 20). Plaintiff was given this position based on her seniority. (Pl. Depo., pp. 82-84). Throughout her employment with the defendant, plaintiff always performed her job with distinction and never received any discipline. (Faile Depo., pp. 29-31).

In March 1998, Faile was contacted by the Administrator of the Tuscaloosa County Juvenile Court, Cecil Hopkins, who informed Faile that he had been contacted by officials from Bryce Hospital, a mental health facility, concerning plaintiff's visits to a juvenile patient, J.M.,[4] who had been transferred to Bryce directly from TCJDF. (Faile Depo., pp. 13, 34, 35).[5] Faile was informed that a doctor from Bryce was concerned about having a TCJDF staff member visit a patient and that the doctor had also reported that plaintiff had given the patient money. (Faile Depo., pp. 13, 34, 35). The doctor from Bryce, as well as an intern, then personally met with Faile concerning plaintiff's visits with the juvenile. (Faile Depo., p. 16).

---

[4] The full name of the juvenile at issue is not being used in order to maintain the child's anonymity.

[5] J.M. was transferred from the detention center to Bryce after being found with a gun to the child's head. (Pl. Depo. pp. 91, 92).

7

Faile considered plaintiff's actions to violate CCS's policy against contact with residents and former residents of CCS. Specifically, CCS's policy states:

> POLICY: Employees shall be governed by the following policies in their interaction with residents and former residents of CCS facilities and programs:
>
> . . .
>
> B. Contact with Residents' Families and Close Associates: Employee association with residents, their family members or close associates shall be limited to persons with whom the employee was acquainted or associated with on a personal level prior to the resident's entry into the facility or program. Should an employee be associated with a resident, they must immediately state this to their supervisor and subsequently to the Organizational Unit Head immediately upon knowledge of that resident's entry into the program. The Organizational Unit Heat will determine if a shift or unit change needs to be implemented in order to limit the exposure of the employee to the resident.
>
> . . .
>
> Additionally, staff will not engage in the following activities:
>
> (1) Display of favoritism, preferential, or any differing treatment of one resident, or group of residents, over another;
>
> (2) giving of gifts, favors or services (beyond those required by the Company);
>
> . . .
>
> (5) contact outside the facility/program other than incidental contact.

8

> (C) Contact with Former Residents: Employee contact with former residents, their families, or close associates shall be limited to those persons with whom the employee was acquainted or associated prior to the resident's entry into the facility or program.

(Faile Depo., Ex. 4). CCS applies the policy to former residents so that if the juvenile returns to the facility, other staff and children do not perceive that one juvenile is given any special treatment. (Faile Depo., p. 37). Plaintiff was well aware of CCS's policy with respect to contact with residents and former residents during her employment. (Pl. Depo., pp. 62, 63).[6]

Faile met with plaintiff to discuss her contact with J.M. (Pl. Depo., p. 102; Faile Depo., p. 12). She admitted to visiting J.M. at Bryce and admitted to giving him money for a pizza. (Faile Depo., p. 12). During that conversation, plaintiff expressed her opinion that the policy did not apply to her since she had known J.M. prior to the child's stay at TCJDF. (Faile Depo., p. 26). Faile did not believe that plaintiff previously was personally acquainted with J.M. outside of TCJDF prior to J.M. becoming a resident since, when pressed by Faile, plaintiff could not tell Faile anything about J.M. (Faile Depo., p. 27). For instance, Faile asked her who J.M.'s parents were

---

[6] J.M. was released from Bryce and returned to TCJDF on March 12, 1998, the day before Faile terminated plaintiff. (Smith Aff. ¶4).

and where J.M. lived and she did not know. (Faile Depo., pp. 27, 35, 36). In considering the motion for summary judgment the court accepts as fact that plaintiff had known J.M. prior to J.M.'s stay at TCJDF.[7]

After meeting with plaintiff, Faile discussed the situation with Cordrey, the Regional Manager of CCS over TCJDF (and former Administrator of TCJDF). Cordrey informed Faile that a violation of CCS's policy with respect to contact with residents and/or former residents of CCS warranted immediate termination. (Cordrey Aff.). Faile believed plaintiff had violated CCS's policy concerning contact with residents/former residents, and he terminated her employment with CCS on March 13, 1998. (Pl. Depo., p. 104; Faile Depo., pp. 10, 11, 34-36, Ex. 6). Faile had earlier threatened plaintiff with termination. (Faile Depo., Ex. 2). After terminating the plaintiff, Faile gave the position to a Caucasian employee, Margaret Wood, the person who, along with plaintiff, was considered for the job in February 1998 when plaintiff was given the full-time child care worker position. (Defendant's September 28, 1998 response to EEOC).[8]

---

[7] The court notes the absence of any evidence to support the inference in plaintiff's argument (Pl.'s Br. 6-7) that Faile's belief regarding plaintiff's prior personal acquaintance with J.M. was fabricated or at least unreasonable.

[8] The court is aware that the affidavit of Tracey Smith supports a conclusion that Kim Kirkman, an African-American,

10

## IV. Applicable Substantive Law and Analysis of Section 1981 Claim

The plaintiff claims disparate treatment racial discrimination under 42 U.S.C. § 1981. Section 1981 provides that:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

42 U.S.C. § 1981(a) (1994). The same framework long used to analyze claims under Title VII is also employed in assessing claims of employment discrimination under the section 1981. See <u>Standard v. A.B.E.L. Servs., Inc.</u>, 161 F.3d 1318, 1330 (11th Cir. 1998) ("Both of these statutes [Title VII and section 1981] have the same requirements of proof and use the same analytical framework, therefore we shall explicitly address the Title VII claim with the understanding that the analysis applies to the § 1981 claim as well.").

---

filled plaintiff's position and that who actually filled the position may be difficult to determine. (Faile Depo. pp. 20-22). For purposes of considering the pending motion the court will use the version supplied by defendant to EEOC.

11

The analysis of the plaintiff's claims will be determined not only by the nature of the allegations but also by the quality of the evidence offered in support of those claims. See id. (noting that "[t]he analytical framework and burden of production var[y] depending on the method of proof chosen"). In general, a plaintiff may attempt to establish a claim of illegal employment discrimination through the use of direct evidence, circumstantial (indirect) evidence, or statistics. See id.; Carter v. City of Miami, 870 F.2d 578, 581 (11th Cir. 1989) (ADEA case). See also Schoenfeld v. Babbitt, 168 F.3d 1257, 1266 (11th Cir. 1999) (recognizing the availability of either direct or circumstantial evidence). A plaintiff's ability to proceed through the use of circumstantial evidence of discrimination is necessarily important because direct proof of discrimination is uncommon. See Combs v. Plantation Patterns, 106 F.3d 1519, 1537 (11th Cir. 1997); Grigsby v. Reynolds Metals Co., 821 F.2d 590, 595 (11th Cir. 1987). Direct evidence is "[s]uch evidence [which], if believed, proves the existence of a fact in issue without inference or presumption." Burns v. Gadsden State Community College, 908 F.2d 1512 (11th Cir. 1990). Cf. Wright v. Southland Corp., 187 F.3d 1287, 1293-94 (11th Cir. 1999) (per Tjoflat, J.) (defining direct evidence as "evidence from which a reasonable trier of fact could find, more probably than not, a causal link

between an adverse employment action and a protected personal characteristic" and finding the outcomes reflected in prior case law consistent with that definition). However, direct evidence does not include "stray remarks in the workplace" or "statements by nondecisionmakers" or "statements by decisionmakers unrelated to the decisional process itself." Price Waterhouse v. Hopkins, 490 U.S. 228, 277 (O'Connor, J., concurring) (1989). See also EEOC v. Alton Packaging Corp., 901 F.2d 920, 924 (11th Cir. 1990) (quoting Price Waterhouse).

    Here, plaintiff has presented only circumstantial evidence of racial discrimination under section 1981. "In evaluating [discrimination] claims supported by circumstantial evidence, [the courts of this circuit] use the now-familiar framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973), and Texas Department of Community Affairs v. Burdine, 450 U.S. 248, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)." Combs, 106 F.3d at 1527. Under the McDonnell Douglas and Burdine framework, the plaintiff first has the burden of establishing a prima facie case of discrimination, which creates a rebuttable presumption that the employer acted illegally. See id. at 1527-28. The methods of presenting a prima facie case, as well as the exact elements of the case, are not fixed; rather they are

flexible and depend to a large degree upon the facts of the particular situation. See, e.g., Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984); Lincoln v. Board of Regents of Univ. Sys., 697 F.2d 928, 937 (11th Cir. 1983). In general, a plaintiff establishes a prima facie case of employment discrimination by showing that he or she was a qualified member of a protected class and was subjected to an adverse employment action but that otherwise similarly situated employees outside the plaintiff's class were treated dissimilarly. See McDonnell Douglas, 411 U.S. at 802.

Once the plaintiff has shown a prima facie case and, thereby, has raised the presumption of discrimination, the burden of production shifts to the employer to proffer a legitimate and nondiscriminatory reason for its actions. See Combs, 106 F.3d at 1528. The employer's burden is so light as to be virtually weightless, meaning that the employer need merely put forth a legitimate reason for its actions and need not convince the court that the reason offered was the true, motivating force. See Tipton v. Canadian Imperial Bank of Commerce, 872 F.2d 1491, 1485 (11th Cir. 1989). If the employer satisfies that burden by articulating a nondiscriminatory reason, then the presumption of discrimination falls and the burden of production again shifts to the plaintiff to offer evidence sufficient for a reasonable jury

to conclude that the employer's supposedly legitimate reason is merely a pretext for illegal discrimination. Although the prima facie case is irrelevant once the employer has offered a legitimate reason for its actions, the evidence of pretext may include the same evidence offered to establish the prima facie case. See Combs, 106 F.3d at 1528. Despite this shifting of the burden of production between the plaintiff and the defendant under the McDonnell Douglas and Burdine framework, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248. 253 (1981). Given that the ultimate burden of persuasion always lies with the employee, a plaintiff may prevail on an employment discrimination claim and may also defeat a summary judgement either by proving that intentional discrimination did indeed motivate the defendant or by producing sufficient evidence to allow a rational trier of fact to disbelieve the employer's proffered legitimate reasons, thus permitting but not compelling the trier of fact to make a finding of illegal discrimination. See Reeves v. Sanderson Plumbing Prods., Inc., 120 S. Ct. 2097, 2108-09 (2000); St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502 (1993); Abel v. Dubberly, 210 F.3d 1334, 1339 (11th Cir. 2000); Alexander v.

Fulton County, 207 F.3d 1303, 1336 (11th Cir. 2000); Combs, 106 F.3d at 1529-38 (interpreting Hicks and the post-Hicks case law); Hairston v. Gainesville Sun Publ'g Co., 9 F.3d 913, 920-21 (11th Cir. 1993).

To establish a prima facie case of disparate treatment race discrimination based upon her termination, plaintiff may show: (1) that she is within a protected class; (2) that she was qualified for the position she held; (3) that she was fired; and (4) that the position was filled by someone outside the plaintiff's class. See Krieg v. Paul Revere Life Ins. Co., 718 F.2d 998 (11th Cir. 1984). Plaintiff has satisfactorily established a prima facie case using this method.[9]

Plaintiff may also establish a prima facie case of disparate treatment race discrimination based upon her termination by showing: (1) that she is within a protected class; (2) that she was qualified for the position she held; (3) that she was fired; and (4) that a similarly situated employee outside the protected class was not fired. Nix v. NLCY Radio/Rahall Communications, 738 F.2d 1181 (11th Cir. 1984). Defendant correctly points out that plaintiff has not even presented argument, much less

---

[9] See footnote 8, supra.

evidence, to support this method of establishing a prima facie case.

Even though that plaintiff has met the elements of a prima facie case of discrimination, her claim ultimately fails as the defendant has articulated a legitimate and non-discriminatory reason for its termination of plaintiff, which reason the plaintiff has failed to rebut.  See Combs v. Plantation Patterns, 106 F.3d at 1527-29 (explaining that once an employment discrimination plaintiff establishes a prima facie case, the burden of production then shifst to the defendant to articulate legitimate, non-discriminatory reasons for its action, following which the burden of production then shifts back to the plaintiff to offer evidence tending to show that the defendant's proffered reasons are really pretext for illegal discrimination); Alexander v. Fulton County, Georgia, 207 F.3d 1303, 1336 (11th Cir. 2000). So long as the reason advanced by defendant does not implicate race (and the one here advanced does not), then that reason is legitimate for purposes of meeting defendant's burden of production.  As rebuttal evidence, the plaintiff has offered nothing other than the fact that, after plaintiff's termination Faile hired Margaret Wood, a Caucasian, and that Faile had threatened to terminate her during the one month she had held the full-time job of child care worker.  As to the hiring of Wood,

17

this was the fourth element of plaintiff's prima facie case. While such element is appropriate to consider along with other evidence of pretext, it certainly cannot alone suffice to satisfy plaintiff's burden of production; otherwise, the burden of production is meaningless as it is always satisfied by the prima facie case method utilized here. As to the threats to terminate plaintiff, there is simply no evidence to support a claim that such threats were in any way related to plaintiff's race. The absence of that evidence is particularly significant since Faile, in February of 1998, selected plaintiff over Wood for the position and the next month, March 13, 1998, terminated her for violating CCS's policy, leading to the selection of Wood as the replacement. In essence, plaintiff has offered nothing other than her own subjective beliefs and accusations that race was the real reason that she was terminated from her employment. See Young v. General Foods Corp., 840 F.2d 825, 830 (11th Cir. 1988). In a case such as this, "[w]here the defendant's justification evidence completely overwhelms any inference to be drawn from the evidence submitted by the plaintiff, the district court may properly acknowledge that fact and award summary judgment to the employer." Grigsby v. Reynolds Metals Co., 821 F.2d 590, 597 (11th Cir. 1987).

In conclusion, this Court finds that no material issues of fact remain as to the plaintiff's section 1981 claim and that defendant CCS is entitled to judgment as a matter of law on that claim. Therefore, summary judgment is due defendant in this case. A separate order in conformity with this opinion will be entered.

DONE this 27th day of September, 2000.

*[signature]*
SENIOR UNITED STATES DISTRICT JUDGE